UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROY F. BOSTWICK, | CASE NO. 13-cv-05783 BHS |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | Noting Date: August 1, 2014 |
| Defendant. | |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 16, 17, 18).

After considering and reviewing the record, the Court finds the ALJ erred in failing to provide legally sufficient reasons to discredit the opinions of Dave Little, D.O., and Janet L. Lewis, Ph.D.. Because these errors were not harmless, this matter should be

reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

## BACKGROUND

Plaintiff, ROY F. BOSTWICK, was born in 1970 and was 36 years old on the amended alleged date of disability onset of June 20, 2006 (*see* Tr. 72, 210-16, 217-20). Plaintiff obtained his GED and completed two years of computer repair training but did not get a certificate because the school shut down (Tr. 63). Plaintiff has worked as a general laborer through temporary service agencies (Tr. 245-56).

According to the ALJ, plaintiff has at least the severe impairments of "Gout; Degenerative Joint Disease of the Knees; Baker's Cyst in the Right Leg; Status-Post Hip Surgery; Degenerative Disc Disease of the Lumbar Spine and Thoracic Spine; Obesity; Major Depressive Disorder; Rule Out Post-Traumatic Stress Disorder; Personality Disorder; and Polysubstance Dependence of Methamphetamine, Alcohol, and Cannabis (20 CFR 404.1520(c) and 416.920(c))" (Tr. 28-29). At the time of the hearing, plaintiff was single and living alone in an apartment (Tr. 59).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* Tr. 115-17, 118-21, 123-27, 128-33). Plaintiff's requested hearing was held before Administrative Law Judge Michael Gilbert ("the ALJ") on January 10, 2012 (*see* Tr. 55-104). On May 23, 2012, the ALJ issued a written decision in

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 2

which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 23-54).

On July 8, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in September 2013 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on January 15, 2014 (*see* ECF Nos. 9, 10).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether or not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly assessed plaintiff's residual functional capacity; and (4) Whether or not the ALJ erred by basing his step five finding on vocational expert testimony made in response to a hypothetical that did not include all of plaintiff's limitations (*see* ECF No. 16, p. 1).

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1)     Whether or not the ALJ properly evaluated the medical evidence.

    a.  Dave Little, D.O. – Treating Physician

Dr. Little performed a physical evaluation of plaintiff on May 21, 2009 for the state Department of Social and Health Services (Tr. 453-58).  Dr. Little diagnosed plaintiff with severe arthritis in his knees, blisters on his hands, depression and PTSD (Tr. 455).  Based on these impairments, Dr. Little rated plaintiff's work ability as "severely limited," which was defined as being "unable to lift at least 2 pounds or unable to stand and/or walk" (Tr. 455).  The ALJ gave this opinion little weight, finding that the "totality of the objective medical evidence in the record does not support the limitations opined by Dr. Little." (Tr. 44).

Dr. Little gave another medical opinion regarding plaintiff on November 11, 2011 (Tr. 862-63).  Dr. Little noted that plaintiff had gout and arthritis in his knees and opined that the combination of impairments would likely result in absenteeism of three or more days per month (Tr. 862-63).  Dr. Little also noted that he found plaintiff's complaints to be credible (Tr. 863).  The ALJ gave his opinion no weight finding it inconsistent with the medical evidence in the record and with Dr. Little's treatment records (Tr. 44).  The ALJ also notes that "Dr. Little opined that the claimant will miss work but the absenteeism is ill defined and does not demonstrate that the claimant is disabled." (Tr. 45).  Plaintiff argues that the ALJ's reasons for discrediting both of Dr. Little's opinions were not legally sufficient (ECF No. 16, pp. 12-13).  This Court agrees.

When a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

The only reason the ALJ gave for discrediting Dr. Little's 2009 opinion was that it was unsupported by objective evidence. However, it is insufficient for an ALJ to reject the opinion of a treating or examining physician by merely stating, without more, that there is a lack of objective medical findings in the record to support that opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Thus, the ALJ's failure to provide a specific and legitimate reason to discredit this opinion was legal error.

In regards to Dr. Little's 2011 opinion, while the ALJ stated that the opinion is inconsistent with the record, he failed to point out any such inconsistencies (Tr. 44). Instead, his analysis shows that he is once again arguing that the opinion is unsupported by the objective evidence in the record (Tr. 44). As stated above, this alone is not a sufficient reason to discredit a medical opinion. *See Embrey*, 849 F.2d at 421. The ALJ's other stated reason for discrediting this opinion is that the opined absenteeisim is "ill defined and does not demonstrate that the claimant is disabled." (Tr. 45). Dr. Little's opinion was that the combination of plaintiff's impairments would likely result in absenteeism of three or more days per month (Tr. 863). It is unclear to this Court how the ALJ felt that opinion could be further defined. Further, based on the vocational expert testimony, missing more than three days per month would result in an inability to sustain competitive employment (Tr. 101). The ALJ erred in failing to provide specific and legitimate reasons to discredit both of Dr. Little's opinions.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The court noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Molina*, *supra*, 674 F.3d at 1115. The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity

to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)). Because both opinions from Dr. Little opined greater limitations than those included in the ALJ's residual functional capacity finding, had the opinions been accorded weight, the disability determination may very well change. Thus, the ALJ's errors are not harmless.

      b.  Janet L. Lewis, Ph.D. – Examining Psychologist.

Dr. Lewis evaluated plaintiff on May 12, 2010 for the state Department of Social and Health Services (Tr. 739-49). Dr. Lewis diagnosed plaintiff with Pain disorder, Major Depressive Episode, Intermittent Explosive Disorder, Substance Abuse is reported remission, and Antisocial Personality Disorder (Tr. 742). Dr. Lewis opined that plaintiff would be markedly limited in his ability to exercise judgment and make decisions, relate appropriately to coworkers and supervisors, interact appropriately in public contacts, care for self, including personal hygiene and appearance, and maintain appropriate behavior in a work setting (Tr. 743).

Dr. Lewis evaluated plaintiff again on August 10, 2011 (Tr. 802-12). Dr. Lewis diagnosed plaintiff with the same impairments but found plaintiff to be severely limited in his ability to communicate and perform effectively in a work setting with public contacts, and in his ability to maintain appropriate behavior in a work setting (Tr. 804). Dr. Lewis found plaintiff markedly limited in his ability communicate and perform effectively in a work setting with limited public contacts (Tr. 804).

1    The ALJ gave no weight to either opinion from Dr. Lewis (Tr. 46).  He discredited
2 the 2010 opinion, finding it based on plaintiff's self reports, which were considered
3 incredible (Tr. 46).  The ALJ also noted Dr. Lewis did not have an accurate record of
4 plaintiff's substance abuse history and found that Dr. Lewis did not consider plaintiff's
5 current use and its affect on plaintiff's presentation.  *Id*.  The ALJ gave no weight to the
6 2011 evaluation because he found it based on the same information used to render the
7 2010 evaluation (Tr. 46).  He also noted that Dr. Lewis "does not appear to rely much on
8 the findings of her examination, which show that the claimant performed the mental
9 status examination with little difficulty."  (Tr. 46).  Plaintiff argues the ALJ failed to
10 
11 provide sufficient reasons to discredit these opinions (ECF No. 16, p. 13).  Again, this
12 Court agrees.

13    "A physician's opinion of disability 'premised to a large extent upon the
14 claimant's own accounts of his symptoms and limitations' may be disregarded where
15 those complaints have been" discounted properly. *Morgan, supra,* 169 F.3d at 602
16 (*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*,
17 839 F.2d 432, 433-34 (9th Cir. 1988))). However, like all findings by the ALJ, a finding
18 that a doctor's opinion is based largely on a claimant's own accounts of his symptoms
19 and limitations must be based on substantial evidence in the record as a whole. *See*
20 *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161
21 F.3d 599, 601 (9th Cir. 1999)).
22 
23    The ALJ bases his conclusion that Dr. Lewis based her opinions primarily on
24 plaintiff's subjective statements on a disclaimer written at the end of the psychological

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 8

evaluation (Tr. 745). This identical disclaimer was written on both evaluations and stated in part that if background information was not made available, the report is "largely based upon a brief interview and a significant portion of the data upon which it rests is gathered through self-report." (Tr. 745, 812). The ALJ failed to acknowledge that at the time of the first evaluation Dr. Lewis noted that he reviewed records from September 28, 2006 and later referred to a medical record from September 17, 2009 (Tr. 739-40). The ALJ also failed to acknowledge that Dr. Lewis noted personally observing plaintiff's symptoms during both evaluations (Tr. 741, 808).

In addition to this, the ALJ completed a Mental Status Examination during both psychological evaluations (Tr. 746-49, 810-12). The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to

observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

While the ALJ found Dr. Lewis's opinion to be based primarily on plaintiff's subjective complaints, this finding was not supported by substantial evidence and this was not specific and legitimate reason to discredit either of Dr. Lewis's opinions.

The ALJ further discredited the initial evaluation from Dr. Lewis stating that the ALJ did not have an accurate picture of plaintiff's drug and alcohol use and did not consider the effect it would have on plaintiff's presentation (Tr. 46). During the first evaluation, plaintiff reported that he still drank alcohol and had last drank a "couple days ago" (Tr. 740). Dr. Lewis also noted that the records showed he was discharged from substance abuse treatment in 2009 for not being fully compliant with treatment rules. *Id*. Dr. Lewis completed the "Substance Abuse" section of the psychological evaluation form indicating that plaintiff's alcohol use may affect his symptoms (Tr. 742). The ALJ pointed to no evidence to support a conclusion that plaintiff was abusing drugs at the time of the evaluations with Dr. Lewis, and it appears that Dr. Lewis was well aware of plaintiff's substance abuse history and current alcohol abuse. The ALJ's finding that Dr. Lewis was ill informed about this issue is not supported by substantial evidence and is not a specific and legitimate reason to discredit Dr. Lewis's opinions.

The ALJ discredits Dr. Lewis's second opinion finding that Dr. Lewis did not appear to rely on the test results (Tr. 46). When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

While the ALJ opined that Dr. Lewis did not rely on the test results to make her opinion, he provided no explanation to support this conclusion. Further, he failed to explain why his interpretation of the test results was more valid than that of a trained Psychologist.

The ALJ failed to provide legally sufficient reasons to discredit both of Dr. Lewis's opinions. Had Dr. Lewis's opinions been fully adopted, the disability

determination would likely have changed. Thus, the ALJ's errors were not harmless. *See Molina* 674 F.3d at 1115.

  (2) Whether or not the ALJ properly evaluated plaintiff's testimony.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

  (3) Whether or not the ALJ properly assessed plaintiff's residual functional capacity and whether or not the ALJ erred by basing his step five finding on vocational expert testimony made in response to a hypothetical that did not include all of plaintiff's limitations.

Similar to the ALJ's credibility determination, the ALJ's RFC finding and step five determination are based in part on an assessment of the medical evidence. Because we have already concluded the medical evidence should be reassessed on remand of this matter, the ALJ should also consider anew the plaintiffs RFC and whether plaintiff is capable of performing work in the national economy.

## CONCLUSION

The ALJ erred in evaluating the medical evidence from Dave Little, D.O., and Janet L. Lewis, Ph.D. Because these errors may have affected the ultimate disability determination, the errors were not harmless.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

405(g) to the Acting Commissioner for further consideration.  **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 1, 2014**,** 2014, as noted in the caption.

Dated this 9th day of July, 2014.

J. Richard Creatura
United States Magistrate Judge